# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER CLEVELAND,        )
                                     )
         Petitioner,              )
                                       )
v.                                      )         Case No. CIV-13-1281-F
                                       )
TOMMY SHARP, Warden,          )
                                       )
         Respondent.[1]         )

## REPORT AND RECOMMENDATION

Petitioner, Christopher Cleveland, appearing pro se, has filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Doc. No. 1] challenging the constitutionality of his state court conviction in Case No. CF-2009-605, District Court of Oklahoma County, State of Oklahoma. Respondent has filed a Response [Doc. No. 8] and Petitioner has filed a Reply [Doc. No. 15] and Supplemental Reply [Doc. No. 21]. Respondent has also submitted the State Court Records [Doc. No. 11].[2]

The matter is now at issue. The matter has been referred by United States District Judge Stephen P. Friot for proposed findings and recommendations consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below it is recommended that the Petition be denied.

---

[1] Plaintiff filed a Notice of Change of Address [Doc. No. 23] reflecting that he is currently in custody at the Howard McLeod Correctional Center in Atoka, Oklahoma where the current warden is Tommy Sharp. Warden Sharp, therefore, is substituted in place of Terry Martin as the proper respondent in this action. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts.

[2] The State Court Records include the Transcript of Jury Trial Proceedings held on March 1st and 2nd, 2011, hereinafter "Tr.___."

## I.      Procedural History

Petitioner was convicted, after jury trial, of perjury, in violation of Okla. Stat. tit. 21, § 419.[3]  Petitioner was sentenced to ten years' imprisonment and the sentence was ordered to run consecutively to the sentence entered in a separate case, *State v. Cleveland*, Case No. CF-04-1113, District Court of Oklahoma County, State of Oklahoma.[4]

Petitioner filed a direct appeal of his conviction to the Oklahoma Court of Criminal Appeals (OCCA).  On August 9, 2012, the OCCA affirmed Petitioner's conviction but modified his sentence to seven years imprisonment.  *See* OCCA Summary Opinion [Doc. No. 8-3] (OCCA Summary Opinion).

On March 1, 2013, Petitioner filed an Application for Post-Conviction Relief [Doc. No. 16-4] and on May 13, 2013, the state district court denied relief. *See* Order Denying Application for Post-Conviction Relief [Doc. No. 8-5] (Post-Conviction Order).  Petitioner appealed, and on October 4, 2013, the OCCA affirmed the state district court's denial of post-conviction relief. *See* OCCA Order Affirming Denial of Post-Conviction Relief [Doc. No. 8-7] (OCCA Order).

Petitioner filed this habeas action on December 9, 2013.

## II.      Grounds for Federal Habeas Corpus Relief

Petitioner raises the following eight grounds for federal habeas corpus relief:

(1) the State's critical witnesses testified without being sworn to tell the truth in violation of Petitioner's Sixth Amendment right to confrontation;

---

[3] Petitioner appeared pro se at the jury trial.  However, he was represented by appointed counsel on direct appeal of his conviction.

[4] *See* State Court Records, Transcript of Sentencing (May 25, 2011) at p. 7.  Petitioner previously sought and was denied federal habeas relief in this judicial district with respect to the conviction and sentence in Case No. CF-04-1113.  *See Cleveland v. Havanek*, Case No. CIV-12-86-F (Jdt. Apr. 1, 2013).

(2) jury instruction error denied Petitioner due process in violation of the Fourteenth Amendment and resulted in the imposition of an excessive sentence in violation of Petitioner's Eighth Amendment rights;

(3) the trial court erred when it failed to address Petitioner's claim that fundamentally ambiguous questions cannot produce perjured answers and failed to grant Petitioner's motion to quash the Information due to insufficiency of the evidence;

(4) the trial court erred when it denied Petitioner's motion to suppress evidence obtained in violation of his Fourth Amendment rights;

(5) Petitioner was denied a fundamentally fair trial in violation of his Sixth and Fourteenth Amendment rights due to the admission of other crimes evidence, prosecutorial misconduct and cumulative error;

(6) Petitioner's Fifth Amendment privilege against self-incrimination was violated by witness testimony about findings made in a prior proceeding to terminate Petitioner's parental rights which included references to Petitioner's invocation of the privilege;

(7) Petitioner's First Amendment right of access to the courts was violated because the Oklahoma Department of Corrections hindered his ability to file a pro se legal brief in the direct appeal of his conviction; and

(8) Petitioner was denied his Sixth Amendment right to the effective assistance of appellate counsel due to counsel's failure to raise his post-conviction claims on direct appeal.

Petitioner raised Grounds One and Two on direct appeal of his conviction to the OCCA. Petitioner raised Grounds Three through Eight in state post-conviction proceedings. Respondent concedes that all grounds for relief are exhausted and timely filed. *See* Response at p. 2, ¶¶ 4 and 5.

### III.    Factual Background

Petitioner was formerly married to Huyen Ai Thi Tran. Petitioner and Ms. Tran, together, are the biological parents of six children. The State of Oklahoma has terminated Petitioner's parental rights as to all six children through three separate jury trial proceedings.[5] Pertinent to the issues raised in this habeas action is the second termination proceeding in August 2008 regarding termination of rights as to the child L.T. Petitioner's testimony at this proceeding gave rise to the perjury charges that resulted in the conviction currently subject to habeas review.

At the time of the August 2008 proceeding, the State had obtained information that led investigators to believe that Petitioner was concealing the fact that Ms. Tran had recently given birth to a sixth child. The State questioned Petitioner about the number of children he had and during that questioning Petitioner failed to disclose the existence of his sixth child, H.T.

At his criminal trial on the perjury charges, Petitioner's line of defense centered upon the fact that when questioned by the State during the August 2008 termination proceeding concerning L.T, he was asked only whether he had any more "children" -- in the plural -- and was never asked if he had another "child." He contends, therefore, he answered the questions truthfully and did not need to disclose H.T.'s existence.

The State's evidence at Petitioner's criminal trial included the testimony of two lawyers who had participated in the August 2008 termination proceeding of L.T. Other evidence included admission of the transcript of that proceeding which contained the perjured testimony,

---

[5] The second and third termination proceedings were instituted in response to determinations by the Oklahoma Department of Human Services (DHS) that Petitioner and Ms. Tran had failed to correct the conditions which led to termination of parental rights as to four of their children in the initial termination proceedings. Tr. at 200-207, 213.

the birth certificate of H.T. which designates Petitioner and Huyen Ai Thi Cleveland, as the biological parents and the Judgment entered in the termination proceeding regarding H.T.[6]

Additional facts will be developed below as pertinent to the claims raised.

## IV.   Standard of Review

Petitioner's grounds for relief, adjudicated on the merits by the OCCA, are governed by the standards of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[7]  Pursuant to the AEDPA, this Court may grant habeas relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2244(d)(1),(2).[8]

A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent."  *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir. 2016) (internal quotation marks omitted). "A

---

[6] The birth certificate identifies Ms. Tran as the mother of H.T. using her married name, Cleveland.  But the birth certificate further designates that her maiden name is Tran.  The State brought perjury charges against Ms. Tran under her maiden name.

[7] "An adjudication on the merits occurs when the state court resolves the case on substantive grounds, rather than procedural grounds."  *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (citation omitted).

[8] To the extent Petitioner has included in his Reply and Supplemental Reply evidence not before the state courts either on direct appeal of his conviction or during post-conviction proceedings, that evidence is not considered on habeas review under § 2254(d)(1).  *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

state-court decision is an 'unreasonable application' of Supreme Court precedent if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (*quoting Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)).

"Review of a state court's factual findings under § 2254(d)(2) is similarly narrow." *Smith v. Duckworth*, -- F.3d --, No. 14-6201, 2016 WL 3163056 at *4 (10th Cir. June 6, 2016) (for publication). Factual findings will not be unreasonable merely because on habeas review the court "would have reached a different conclusion in the first instance." *Brumfield v. Cain*, -- U.S. --. 135 S.Ct. 2269, 2277 (2015) (citation omitted). Instead, the court must defer to the state court's factual determinations so long as "reasonable minds reviewing the record might disagree about the finding in question." *Id.*

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, -- U.S. --, 136 S.Ct. 1149, 1151 (2016) (internal quotation marks and citation omitted). "The state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and citation omitted).

## V. **Analysis**

### A. **Right to Confrontation – Ground One**

Petitioner first claims that the state trial court's refusal to require two State's witnesses to be sworn under oath prior to testifying violates his confrontation rights under the Sixth Amendment. The record establishes that the State called two attorneys as witnesses at trial, an assistant public defender with the Oklahoma County Public Defender's office, Bill McKinley,

and an assistant district attorney in the Juvenile Division of the Oklahoma County District Attorney's office, Lorey Dewey. The trial court stated on the record and before the jury that he would not formally swear under oath these witnesses because, as licensed attorneys, they were "officers of the court." Tr. at 182, 226.

On direct appeal, Petitioner raised this claim as both a violation of Oklahoma statutory law and a violation of the Confrontation Clause. The OCCA rejected Petitioner's claim. The OCCA found that Petitioner "voiced no objection to the trial court's procedure regarding these two attorney witnesses until he recalled them" and based on this untimely objection, reviewed the claim only for plain error. *See* OCCA Summary Opinion at p. 2. The OCCA found that the trial court's "procedure in reminding the attorneys they were testifying under oath as officers of the court was sufficient to satisfy the requirements of [Okla. Stat. tit. 12, §] 2603." *See* OCCA Summary Opinion at p. 2.[9] The OCCA further held that Petitioner failed to show "an error going to the foundation of the case or taking any right essential to his defense . . . ." *Id*.

As an initial matter, this Court must address the OCCA's plain error review of Petitioner's Confrontation Clause claim. As Respondent acknowledges, although the transcript is initially unclear as to whether it was Petitioner, or counsel for co-defendant, Ms. Tran, who timely lodged an objection, the transcript later reflects it was Petitioner. *See* Response at p. 12 (*citing* Tr. at 182, 226, 376, 395). The Court agrees with Respondent's view of the record and finds the OCCA's determination that Petition did not timely object is unsupported by the factual record.

---

[9] Because any violation of state law is outside the province of federal habeas review, the Court need not address whether the requirements of Oklahoma statutory law were satisfied. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

It is unclear whether the OCCA's plain error review constitutes a merits determination of Petitioner's Confrontation Clause claim or whether the OCCA deemed the claim procedurally barred. *See Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003) (explaining that to determine whether the OCCA in fact decided a federal issue, the court must look at "the substance of the plain-error disposition"). Although the OCCA identified Petitioner's claim as involving both a statutory challenge and a constitutional challenge, the OCCA did not thereafter cite any relevant law discussing the federal constitutional issue.

Respondent does not raise the issue of procedural default with respect to this claim. *See McCormick v. Parker*, 821 F.3d 1240, 1245 (10th Cir. 2016) ("[P]rocedural default is an affirmative defense, and the state must either use it or lose it."). Moreover, the procedural bar doctrine applies only where the state's application of a procedural bar is both adequate and independent. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Because this Court's review of the record demonstrates the OCCA wrongly determined that Plaintiff did not lodge a timely objection, application of any procedural bar by the OCCA would not be adequate under the circumstances of this case.

Issues of procedural bar aside, whether the OCCA addressed the merits of the Confrontation Clause claim also affects whether this Court's review of the claim should be de novo or subject to AEDPA deference. Out of caution, the Court reviews the claim de novo. Under either standard, however, Petitioner's claim lacks merits.[10]

_____

[10] To the extent the OCCA's decision constitutes a merits determination subject to AEDPA deference, the claim fails because Petitioner has not established a violation of clearly established federal law. *See House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008) ("Whether the law is clearly established is *the* threshold question under § 2254(d)(1).") (*citing Williams*, 529 U.S. at 390 (emphasis in original)). Petitioner points to no Supreme Court precedent addressing whether the oath requirement is satisfied when an attorney testifies as an officer of the court. *See id.* ("Clearly established law is determined by the United States Supreme Court,

Petitioner has not demonstrated that the core requirements of confrontation have been violated. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The elements of confrontation include: "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Id*. at 846. It is the "combined effect" of these elements that ensures reliability. *Id*.

Here, the witnesses testified in court, both Petitioner and counsel for his co-defendant conducted rigorous cross-examination, and the jury was able to observe the demeanor of the witnesses. As to the oath requirement, the Supreme Court has recognized that "[a]ttorneys are officers of the court, and when they address a judge solemnly upon a matter before the court, their declarations are virtually made under oath." *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978) (addressing the matter in the context of the obligation of defense attorneys to advise the court upon discovering a conflict of interest). Moreover, as Respondent points out, as a condition to practicing law in the State of Oklahoma, attorneys are required to take an oath of office which requires, inter alia, that they "'*do no falsehood or consent that any be done in open court*.'" *See* Response at pp. 13-14 (*quoting* Okla. Stat. tit. 5, § 2). All of these factors demonstrate Petitioner's confrontation rights were not violated. Therefore, Ground One of the Petition should be denied.

---

and refers to the Court's "holdings, as opposed to the dicta.") (*quoting Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). In this regard, what constitutes clearly established federal law is fairly restrictive; the Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings." *Id*. Because Petitioner fails to identify any clearly established federal law, and the Court's own review uncovers no on-point holding, Petitioner's claim must be denied. *See House*, 527 F.3d at 1017 (the lack of clearly established federal law is "analytically dispositive in the § 2254(d)(1) analysis").

**B.      Jury Instruction Error / Excessive Sentence – Ground Two**

As his second ground for relief, Petitioner claims instructional error violated his due process rights.  Petitioner contends that the jury should have been instructed on the necessity to evaluate the materiality of the perjurious statement when determining an appropriate sentence. Petitioner further claims that he received a disproportionate and excessive sentence in violation of his Eighth Amendment rights as a result of the jury instruction error.

The OCCA addressed this claim on direct appeal and determined, as a matter of state law, Petitioner was entitled to his requested instruction.  *See* OCCA Summary Opinion at p. 3.[11]  The OCCA further determined that the failure to give the instruction "prejudicially impacted the sentencing deliberations."  *See id*. (citation omitted).

As the OCCA noted, the jury imposed the maximum sentence against Petitioner, ten years.  *See id*. at p. 3; *see also* Okla. Stat. tit. 21, § 500 (providing sentencing range for perjury in any trial proceeding other than "the trial of an indictment by felony" to be "imprisonment for not less than one (1) year nor more than ten (10) years").  But the OCCA granted relief to Petitioner and modified his sentence from ten years to seven years and ordered the sentence to run consecutive to his sentence in, *State v. Cleveland*, Case No. CF-04-1113, District Court of Oklahoma County, State of Oklahoma.  *Id*. at p. 4.

_____

[11] The OCCA found the instruction was required pursuant to Okla. Stat. tit. 21, § 498(b). *See id*.  Section 498(b) provides:

> Lack of materiality of the statement is not a defense but the degree to which a perjured statement might have affected some phase or detail of the trial, hearing, investigation, deposition, certification or declaration, shall be considered, together with the other evidence or circumstances, in imposing sentence.

Okla. Stat. tit. 21, § 498(b).

The OCCA was authorized under Oklahoma law to modify Petitioner's sentence. *See* Okla. Stat. tit. 22, § 1066 ("The appellate court may reverse, affirm or modify the judgment or sentence appealed from, and may, if necessary or proper, order a new trial or resentencing."). Where, as a matter of state law, a state appellate court has discretionary authority to modify a jury-imposed sentence on appeal, no due process violation occurs. *See Carbray v. Champion*, 905 F.2d 314, 317-18 (10th Cir. 1990) (*citing Clemons v. Mississippi*, 494 U.S. 738, 746 (1990)). Because Petitioner has been granted relief by the OCCA as a result of the instructional error, Petitioner's due process challenge necessarily fails.

To the extent Petitioner claims his sentence, as modified by the OCCA, is unconstitutionally excessive, his claim also fails. Petitioner does not dispute that his sentence is within the range of punishment statutorily authorized under Oklahoma law. Nonetheless, he claims his sentence is so excessive that it amounts to cruel and unusual punishment in violation of the Eighth Amendment.

"The Eighth Amendment . . . contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations and internal quotations omitted). But this principle "reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77. And where, as here, the sentence is within the permissible statutory range, courts "are reluctant to interfere with the legislative determination of an appropriate sentence range." *Hawkins v. Hargett*, 200 F.3d 1279, 1285 (10th Cir. 1999).

On the facts presented, Petitioner fails to demonstrate his sentence rises to the level of an Eighth Amendment violation. *Compare Harmelin v. Michigan*, 501 U.S. 957, 991 (1991) (upholding sentence of life without parole for first-time offender's possession of large quantity of cocaine) with *Solem v. Helm*, 463 U.S. 277, 303 (1983) (finding unconstitutional sentence of

life without parole for the defendant's seventh nonviolent felony, the crime of passing a worthless check). Petitioner's perjured testimony arose in the context of a proceeding to terminate his parental rights. In that and related proceedings, the State sought to protect Petitioner's children from harm to which they had been subjected while in Petitioner's custody. Petitioner failed to disclose the fact that he had a sixth child, H.T. Notwithstanding Petitioner's untruthful testimony, ultimately, the State successfully terminated Petitioner's parental rights as to that child. Considering "the gravity of the offense and the harshness of the penalty," in deciding whether the sentence is disproportionate, *see Solem*, 463 U.S. at 292, Petitioner fails to establish an Eighth Amendment violation. For these reasons, the claim raised in Ground Two of the Petition should be denied.

### C. Ineffective Assistance of Appellate Counsel – Ground Eight[12]

Petitioner claims his appellate counsel was ineffective "when he failed to raise the grounds preserved in the record." *See* Petition at p. 31. Petitioner states that appellate counsel should have raised on direct appeal each of the claims raised in his state post-conviction proceedings. *Id*. Those claims are presented as Grounds Three through Seven of the Petition.[13]

Petitioner raised his ineffective assistance of appellate claim in his state post-conviction proceedings. The OCCA denied the claim on the merits. The OCCA affirmed the district court's findings that the claims Petitioner contends his appellate counsel should have raised on direct appeal lacked merit. The OCCA further concluded that Petitioner failed to establish "how

---

[12] Petitioner raises ineffective assistance of appellate counsel as both an independent claim and as cause to excuse the procedural default of the claims raised in Grounds Three through Seven of the Petition. The Court, therefore, addresses the independent claim first.

[13] Petitioner also claims "appellate counsel did not raise any issues that were argued in the motion hearings." *Id*. Petitioner does not identify any specific issues for the Court's review. Therefore, the Court only considers issues raised in motion hearings to the extent those issues are included in the claims raised in Grounds Three though Seven.

or why the result of his direct appeal would have or should have been different even if his current grounds for relief had been raised by appellate counsel." *See* OCCA Order at pp. 3-4.

In denying relief, the OCCA applied *Strickland v. Washington*, 466 U.S. 668 (1984) (as adopted by the OCCA in *Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013)), which sets forth the clearly established federal law governing Petitioner's claim of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that "the proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"); *see also Cargle*, 317 F.3d at 1202 ("The proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland* . . . .").

Pursuant to *Strickland*, Petitioner "must show both (1) constitutionally deficient performance, by demonstrating that his appellate counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceedings – in this case the appeal – would have been different." *Cargle*, 317 F.3d at 1196. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks and citation omitted). And, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [as] [t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Id.* (internal quotations marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

13

## 1.    Motion to Quash / Sufficiency of the Evidence

Petitioner claims the trial court should have quashed the Information.  He challenges the sufficiency of the evidence at the preliminary hearing and contends the "evidence was insufficient to warrant the Petitioner bound over to stand trial" and that the "[t]rial court erred when he determine[d] that the statement was [a]n issue of fact to be decided by a jury and not the courts."  *See* Petition at p. 13.  In essence, Petitioner claims he testified that he did not have any other "children" in response to questions at the termination hearing, but never testified that he did not have another "child."  He claims the failure to disclose the existence of his one remaining child did not constitute perjury because there is a difference between the word "children" and "child."  *See id.*[14]  Petitioner contends that "ambiguous questions cannot produce perjured answers."  *See* Petition at p. 10.

Under Oklahoma law "[a]t preliminary hearing the State does not need to present evidence sufficient for a conviction at trial."  *Burnett v. State*, 760 P.2d 825, 828 (Okla. Crim. App. 1988).  "The State only has the burden at preliminary hearing to show that an offense has been committed, and probable cause to believe the defendant committed the offense."  *State ex rel. Peterson v. Ward*, 707 P.2d 1217, 1219 (Okla. Crim. App. 1985).

The trial court denied this claim on review of Petitioner's post-conviction application finding that:

> [t]he State offered evidence at preliminary hearing that the Petitioner committed the offense of perjury where Petitioner made the statement that he had no other children.  This court determined the statement was an issue of fact to be decided by a jury and the court[']s denial of Petitioner's motion was not error.  This claim has no merit and is denied.

---

[14] Respondent aptly sets forth a summary of Petitioner's testimony at the termination proceedings regarding L.T. as pertinent to this claim.  *See* Response at pp. 27-28.

*See* Post-Conviction Order at p. 4. The factual findings of the state court are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not overcome this presumption. Moreover, a review of the preliminary hearing transcript sufficiently demonstrates satisfaction of the probable cause requirement. *See* State Court Records, Transcript of Preliminary Hearing (Sept. 2, 2009).

As the OCCA found, the jury verdict "negat[ed] any claims of insufficient evidence and ambiguity."[15] The OCCA concluded, under *Strickland,* that appellate counsel's failure to raise this issue on direct appeal did not constitute ineffective assistance. *See* OCCA Order at p. 3. Petitioner fails to demonstrate the OCCA's adjudication was contrary to or an unreasonable application of *Strickland*.

### 2. Unlawful Search and Seizure[16]

Petitioner claims he was subjected to an unlawful search and seizure when police seized his child H.T. from Petitioner's apartment. Petitioner claims police unlawfully entered his home and arrested him without a warrant and without probable cause by placing him in handcuffs. He further claims police then conducted an unlawful search of his apartment. *See* Petition at p. 16.

---

[15] If the claim had been raised and reviewed independently, and not as a Sixth Amendment ineffective assistance claim, habeas relief would similarly be denied. *See, e.g., Powers v. Dinwiddie*, 324 F. App'x 702, 704-05 (10th Cir. 2009) ("Because Powers was ultimately convicted, his claim regarding the sufficiency of the evidence at his preliminary hearing cannot be grounds for habeas relief.") (citation omitted).

[16] Pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), a court on habeas review is generally precluded from reviewing a Fourth Amendment claim where the petitioner has a full and fair opportunity to present the claim in the state court proceedings. However, *Stone* does not bar federal habeas review when Fourth Amendment issues are addressed in the context of a Sixth Amendment ineffective assistance of counsel claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986); *see also Hooper v. Mullin*, 314 F.3d 1162, 1175-76 (10th Cir. 2002).

Petitioner denies exigent circumstances existed and further contends "[t]he baby was not in plain view." *See id.*[17]

Respondent contends the emergency custody order authorized police entry into Petitioner's home.[18] Alternatively, Respondent contends, as the state trial court found, that exigent circumstances warranted entry into the home.[19] Neither party points to any relevant decisional law.

At trial, evidence was admitted, through witnesses testimony, about the circumstances related to the search of Petitioner's home and the police taking custody of H.T.[20] Petitioner claims the trial court should have suppressed evidence related thereto but does not specifically identify the evidence he claims should have been suppressed.

---

[17] Petitioner has submitted on habeas review his Affidavit [Doc. No. 16-1] and sets forth additional facts in support of this claim. To the extent the Affidavit includes facts not before the state courts, such facts have not been considered by this Court. *See Cole v. Trammell*, 755 F.2d 1142, 1155 n. 3 (10th Cir. 2014) (declining to consider affidavits submitted by habeas petitioner's defense counsel and defense team members and limiting review to "the evidence that was before the OCCA") (*citing Cullen*, 563 U.S. at 182 (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits")).

[18] The emergency custody order or "pickup order" as referenced in the witness testimony was admitted into evidence at the criminal trial as Defendant's Exhibit 1. *See* State Court Record, Exhibits (filed Aug. 3, 2011); *see also* Tr. at 216, 276 (describing a "pickup order").

[19] The record establishes that the police had confirmed with the manager of the apartment complex that Petitioner lived there. When police arrived, they heard what sounded like a baby crying. When they knocked on the door to the apartment, they could not get a response from anyone inside. Ultimately, the fire department helped police gain entry through the door of the apartment. Tr. at 277-295.

[20] Although not expressly addressed by the parties, it appears the State offered this evidence to both show that Petitioner engaged in continuing conduct to conceal H.T. from State authorities after his testimony during the parental termination proceedings, and to show that Petitioner was the father of H.T.

The trial court denied this claim for post-conviction relief. The trial court explained that as part of the parental termination proceedings, the state court issued a pickup order for H.T. *See* Post-Conviction Order at p. 3. Moreover, the trial court determined "exigent circumstances" validated the search and seizure. *Id.* The trial court found that "[w]hen police arrived at Petitioner's residence, evidence presented of a baby's cry" and that fact "combined with a valid court order mandating a child's placement in DHS custody" constituted "exigent circumstances warranting a forceful entry into the dwelling." *Id.* Again, pursuant to § 2254(e), the factual findings of the state court are entitled to a presumption of correctness and Petitioner has not overcome that presumption.

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment requires that a seizure inside a home be supported by a warrant unless exigent circumstances exist or the officers have some other lawful reason to be inside the property. *See Payton v. New York*, 445 U.S. 573, 590 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 468, (1971) ("[N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'").

"The removal of a child from his custodial parents' home is a seizure for Fourth Amendment purposes, which is constitutionally reasonable if it is pursuant to a court order, is supported by probable cause, or is justified by exigent circumstances." *Krantz v. City of Toledo Police Dept.*, 197 F. App'x 446, 454 (6th Cir. 2006) (citations omitted). Because a child custody order is akin to a warrant, officers may enter a residence to execute the order upon reasonable belief the child is inside. *See Tenenbaum v. Williams*, 193 F.3d 581, 602 (2d Cir. 1999) ("In the

context of a seizure of a child by the State during an abuse investigation . . . a court order is the equivalent of a warrant."); *Wernecke v. Garcia*, 591 F.3d 386, 395, 397 (5th Cir. 2009) (officers acting pursuant to a child custody order have limited authority to enter a residence to execute the order upon reasonable belief that the child is inside). Here, officers entered Petitioner's residence pursuant to a court order, for purposes of placing H.T. in protective custody. They had a reasonable belief that H.T. was at the apartment and exigent circumstances otherwise supported the entry into the home.

Petitioner cannot prevail on his ineffective assistance of appellate counsel claim. He has not demonstrated deficient performance of counsel because the Fourth Amendment challenge lacks merit. Nor has Petitioner demonstrated that the result of his proceedings would have been different had evidence been suppressed. The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland*. Applying the governing standard, Petitioner's ineffective assistance of appellate counsel claim lacks merit and should be denied.

### 3. Admission of Other Crimes Evidence

Petitioner claims appellant counsel should have challenged the admission of other crimes evidence on direct appeal because the evidence was so prejudicial that it denied him a fundamentally fair trial in violation of his due process rights. First, Petitioner points to a statement made by the trial court during voir dire. The statement is not evidence but rather a cautionary instruction given to the jury:

> COURT:     The Defendants are in the custody of the Oklahoma County Sheriff for reasons or matters that are of no relevance to this trial. You should draw no inference as to why they are in custody nor should it have any bearing on the guilt or innocence of these defendants. Does anyone disagree with that?

*See* Tr. at 77.  No juror voiced disagreement.  *See id*.  Petitioner did not object to the trial court's admonition at the time it was made.  However, the following day, Petitioner made an objection and the trial court told Petitioner the admonishment was for his protection and stated that "if people think that you're in jail there may be some assumptions that you might be guilty of something[.]"  Tr. at 127.

> In denying post-conviction relief to Petitioner on this claim, the trial court found:

> Petitioner and his wife, codefendant were both in the custody of the Oklahoma County sheriff.  This court did not want the jurors to infer anything adverse to the Petitioner by reason of County deputies appearing in court with the Petitioner daily and he being escort [sic] to and from court daily.  The admonishment was for the Petitioner's protection.

*See* Post-Conviction Order at pp. 4-5.  These factual findings are entitled to a presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1).  The OCCA affirmed the district court's findings that this claim lacked merit and concluded that had the claim been raised it would not have changed the result of Petitioner's direct appeal.  *See* OCCA Order at p. 3.

Jurors are presumed to follow the instructions of the court.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *see also United States v. Coleman*, 7 F.3d 1500, 1506 (10th Cir. 1993) ("A principle tenet of jurisprudence is that jurors are presumed to follow the law.").  Petitioner points to no evidence that the jurors did not adhere to the trial court's instruction or that the admonishment by the trial court otherwise prejudiced the jury.  Necessarily, therefore, Petitioner fails to demonstrate deficient performance that prejudiced his appeal.  The OCCA's determination that appellate counsel did not render ineffective assistance by not raising this claim on direct appeal is entitled to AEDPA deference and this claim should be denied.

Petitioner further contends the above error was "aggravated" by the testimony of Bill McKinney.  During Petitioner's cross-examination of Mr. McKinney, Petitioner asked questions

regarding Mr. McKinney's knowledge concerning the State's pickup order for L.T. Petitioner challenged Mr. McKinney's testimony regarding the conclusion reached by the DHS that Petitioner had been hiding L.T. Tr. at 399.[21] Mr. McKinney testified as follows in response to Petitioner's questions:

> Q.    So you thought the fact the child [L.T.] was up here I guess justifies you say I was hiding the child from DHS; is that correct?
>
> A.    That was our conclusion, yes.
>
> Q.    When you say hiding that means like I was . . . what do you mean by hiding? What is the definition?
>
> A.    Not bringing the child. Knowing there's a pickup order for the child and not bringing the child to DHS or to the court.
>
> Q.    How did I know there was a pickup order for the child?
>
> A.    *That had been discussed in front of Judge Elliott when you were here for your criminal case.*

Tr. at 399-400 (emphasis added). Petitioner did not object to the response given by Mr. McKinney, but continued to elicit testimony about the circumstances related to producing the child L.T. to state officials. *See id.* at 400-01. Moreover, in framing his questions to Mr. McKinney, Petitioner volunteered the fact that Petitioner had been held in contempt of court until the child was produced and that "[b]eing held in contempt of court is a crime in itself[.]" Tr. at 401.

---

[21] According to the State's witness Ms. Dewey, it appeared that Petitioner and his wife previously tried to keep L.T. from the DHS and produced her only when ordered to do so by the court. Tr. at 232, 258-59. As a result, a similar concern existed that Petitioner would try to hide H.T. Tr. at 229-31, 398-401.

Rejecting this claim in state post-conviction proceedings, the trial court found that the testimony was invited by Petitioner and, therefore, Petitioner failed to demonstrate a right to post-conviction relief. *See* Post-Conviction Order at p. 5. The OCCA found "no error or abuse of discretion" with respect to the trial court's findings and concluded that this claim, if raised on direct appeal, would not have changed the result of the appeal. *See* OCCA Order at p. 3.

The OCCA's conclusion constitutes a reasonable application of *Strickland*. *Compare McCain v. McCollum*, 606 F. App'x 425, 429, 430 (10th Cir. 2015) (finding no reasonable probability of a different outcome based on counsel's failure to request limiting instruction on admission of other crimes evidence where evidence of the petitioner's guilt was "not so scarce" and further rejecting due process challenge to admission of the evidence where the petitioner did not object to the admission of the evidence at trial and his own counsel introduced the evidence). The State presented solid evidence of Petitioner's guilt. The central issue before the jury did not turn on Petitioner's hiding of L.T. The evidence of perjury was clear irrespective of this ancillary issue, the testimony about which was invited by Petitioner. Accordingly, this claim lacks merit and the OCCA's denial of Petitioner's Sixth Amendment claim is not contrary to or an unreasonable application of *Strickland*.

Petitioner also challenges the admission of the entire transcript of the August 2008 parental termination proceedings of L.T. *See* State Court Record, Exhibits (filed Aug. 3, 2011), State's Exhibit 1. Petitioner contends the transcript contained highly prejudicial evidence "of child abuse and the drowning of one of the children, beating, burning, violence, abandonment, physical neglect, and inappropriate sexual behavior by the Petitioner [toward] his children." *See* Petition at p. 19.

Respondent counters that Petitioner similarly invited this error. According to Respondent, "Petitioner questioned Tara Bone, a DHS worker, extensively about the case of child abuse against the Petitioner." *See* Response at p. 32 (*citing* Tr. at 321, 324 and 325-332).

The trial court rejected this claim as invited error. *See* Post-Conviction Order at p. 5 ("Petitioner introduced evidence of the deprived cases and the circumstances surrounding them."). And the OCCA concluded that Petitioner failed to demonstrate that raising this claim would have changed the outcome of his appeal. *See* OCCA Order at p. 3.

Petitioner fails to demonstrate that had this evidence been excluded, the result of his trial would have been different. As discussed above, the evidence that Petitioner committed perjury was straightforward and convincing. Thus, even if appellate counsel had successfully challenged the admission of the allegedly prejudicial evidence included in the transcript, Petitioner fails to demonstrate a reasonable probability that the result of his appeal would have been different. Applying AEDPA deference, this claim should be denied.

### 4. Prosecutorial Misconduct – Facts Not in Evidence

Petitioner next claims that appellate counsel should have raised a claim of prosecutorial misconduct. He claims the prosecutor asked an improper question during cross-examination of a DHS worker, Mr. Dimonico. The prosecutor posed the following question: "Mr. Dimonico, you never contacted the Defendants about your investigation before you executed the pickup order with the police, because why would you give someone a head's [sic] up when they have taken off with a baby and absconded with a baby in the past?" Tr. at 373. Petitioner further cites in support of his claim the prosecutor's question referencing Petitioner's "child welfare history" that included "beating, burning, exposure to domestic violence, abandonment, inadequate physical care, failure to protect, age inappropriate sexual behavior on the part of the parents[.]"

*Id*. at 373-74. Petitioner objected to both of these questions and the trial court sustained the objection. *Id*. at 373, 374.

Petitioner claims the trial court should have given a curative instruction to the jury. He contends that "the jurors were presented shocking allegations by the prosecutor, who appeared to have the authority of law, and the jurors could not have disregarded the information even if they had been instructed to do so." *See* Petition at p. 22.

> In denying post-conviction relief on this claim, the trial court found:
>
> The excerpt from the trial that Petitioner complains of is the testimony of a State witness (Mr. Dimonico) that the Petitioner called in his case in chief. The Petitioner questioned the witness regarding Petitioner['s] child welfare history, their history of absconding with another child, the reasons for obtaining the pick-up order, and the circumstances surrounding the pick-up. The State in cross examination of the witness asked the question the Petitioner now complains of. Though the Court sustained Petitioner's objection to the question asked of the witness, it was Petitioner's questioning that opened the door for the line of questions to which the Petitioner alleges are error. The Court of Appeals has held that otherwise inadmissible evidence is properly admitted when the defendant opens the door to its introduction. [citation omitted]. The Court of Criminal [Appeals] has further held that error is cured where a defendant's objection to improper argument is sustained. [citation and internal quotations omitted].

*See* Post-Conviction Order at p. 5. The OCCA affirmed the district court's finding and further concluded that Petitioner failed to demonstrate prejudice as a result of appellate counsel not raising this claim on direct appeal. *See* OCCA Order at p. 3.

For reasons previously discussed in relation to Petitioner's other actions of invited error and based on a review of the state court record and the findings of the state trial and appellate courts, Petitioner has failed to demonstrate the OCCA's rejection of this ineffective assistance of appellate counsel claim is contrary to or an unreasonable application of *Strickland*. This ground for relief, therefore, should be denied.

### 5.      Cumulative Error

Petitioner next claims appellate counsel should have raised a claim of cumulative error on direct appeal.  The state district court denied the underlying cumulative error claim, finding no error with respect to the other claims raised.  *See* Post-Conviction Order at p. 6.  And the OCCA agreed the cumulative error claim had no merit and thus concluded Petitioner failed to establish ineffective assistance of appellate counsel for not raising the claim on direct appeal.  *See* OCCA Order at pp. 3, 4.

Petitioner fails to demonstrate that the OCCA's conclusion is contrary to or an unreasonable application of *Strickland*.  Indeed, cumulative error analysis is applicable only where there are two or more actual errors and does not apply to the cumulative effect of non-errors.  *Duckworth*, 2016 WL 3163056 at **15-16 (citations omitted).  In this case, the OCCA did not find two or more actual errors.   Thus, Petitioner has failed to demonstrate that appellate counsel provided ineffective assistance of counsel in failing to raise a cumulative error claim on direct appeal.   Applying the double deference owed to the state court's resolution of this claim, Petitioner has failed to establish a right to habeas relief.

### 6.      Prosecutorial Misconduct – Privilege Against Self-Incrimination

Petitioner claims prosecutorial misconduct violated his Fifth Amendment privilege against self-incrimination. Petitioner relies on the prosecutor's alleged improper comment on Petitioner's refusal to answer questions during the August 2008 termination proceedings of L.T.

The prosecutor attempted to introduce a Court Minute Order reflecting the findings of the trial court with respect to the August 2008 termination hearings.  Specifically, the prosecutor asked State's witness Lorey Dewey, about the trial judge's findings reflecting the "level of cooperation" by Petitioner and his wife in response to his questions about the child "[F.C.]."  Tr.

at 237.[22]  The prosecutor asked Ms. Dewey to identify those findings.  In response, Ms. Dewey testified:

> A.    He noted specifically that of both the alleged mother and father the
> following questions were asked; "Are you the parent of the child?  What is the
> full name of the child?  What is the age of the child, date of birth?"  What was the
> nature of the child – Excuse me.  What was the name of the child's pediatrician
> and what hospital was the child born?
>
> To each of the questions the alleged mother and father refused to answer
> claiming said answer would incriminate them and claiming privilege under the
> Fifth Amendment to the U.S. Constitution.

Tr. at 238.

The trial judge immediately called a bench conference admonishing the prosecutor that she was "getting into a dangerous area" and that she was "breaching" Petitioner's right to remain silent by putting the findings in the record.  *Id.*  Following a lengthy discussion with counsel, the trial judge ruled that he would admit the exhibit but without the "findings that they were given their rights and they refused to answer."  Tr. at 244, 246.  The trial judge further admonished the jury immediately upon their return to the courtroom as follows:

> THE COURT: . . . Ladies and gentleman, there are times when emotions
> take over sometimes and it's not to reflect adversely on either one of them.  There
> was a statement that was read into the record that, in this court's opinion, had no
> place in this matter regarding what Mr. and Mrs. Tran may have said or what they
> may have done, and so I'm asking you all to disregard, disregard any mention of

---

[22] It appears from the record that F.C. is another name used for the child H.T.  *See, e.g.*, Tr. at 235-36.

that.  If it's in your notes strike it out of your notes because it has nothing to do with the issue that you are here to decide and that's the only issues for your considerations, not that.  So if you all will call your witness back to the stand. . . .

Tr. at 247.

The prosecutorial misconduct at issue directly affects a specific constitutional right.  In such circumstances, "a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to the denial of that right."  *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003).

The state trial court rejected this claim in post-conviction proceedings relying on the admonishment to the jury and the fact that following the court's admonishment "no further evidence was introduced regarding that right."  *See* Post-Conviction Order at pp. 5-6.  The OCCA affirmed this finding and concluded that Petitioner failed to demonstrate the result of his direct appeal would have been different had appellate counsel raised this claim.  *See* OCCA Order at p. 3.

Petitioner fails to demonstrate the OCCA's determination was contrary to or an unreasonable application of *Strickland*.  As the state trial court found, the admonishment to the jury, the redaction of the findings, and the fact that no further evidence was introduced on the issue of Petitioner's right to remain silent cured any infirmities resulting from the improper questioning.  *Compare Patton v. Mullin*, 425 F.3d 788, 812 (10th Cir. 2005) (prosecutor's troubling comments on the defendant's presumption of innocence did not give rise to constitutional error where "the trial judge proceeded to correct the remark, repeatedly stating that the government had the burden of proving all of the elements beyond a reasonable doubt and that such proof was the only way that the presumption of innocence could be overcome"); *see also*

*Hamilton v. Mullin*, 436 F.3d 1181, 1187-88 (10th Cir. 2006) (explaining that "any error in permitting the prosecutor to comment on the defendant's right to remain silent is subject to harmless error analysis"). Moreover, as stated above, the evidence of Petitioner's guilt was strong. *See Hamilton*, 436 F.3d at 1190 (finding prosecutor's commentary on the presumption of innocence harmless where the evidence of the defendant's guilty was substantial). Here, the right to remain silent – implicated in the context of Petitioner's exercise of that right in a different proceeding – was not "so prejudiced that it effectively amounted to a denial of that right." *See Torres*, 317 F.3d at 1158; *see also Marhorney v. Wallman*, 917 F.2d 469, 473 (10th Cir. 1990) (court must "evaluate the prejudicial effect that the comments had on the [specific constitutional right] by considering the pertinent surrounding circumstances at trial"). Accordingly, Petitioner has not demonstrated a right to habeas relief. This claim, therefore, should be denied.

### 7.     Access to Courts

As his final allegation of ineffective assistance of appellate counsel, Petitioner claims that while incarcerated, the Oklahoma Department of Corrections prevented him from complying with filing requirements related to his direct appeal before the OCCA by denying him access to the law library and the legal mail system. As a result, Petitioner claims he was prevented from raising the post-conviction claims on direct appeal. He claims his appellate counsel should have raised this issue on direct appeal.

The OCCA rejected this claim finding that the "Petitioner's pleadings show he was not denied the opportunity to file a pro se appeal . . . but only denied access to legal materials since he was represented by counsel." *See* OCCA Order at p. 3.

Because Petitioner filed a direct appeal through appointed counsel, Petitioner fails to demonstrate that failure to raise this claim on direct appeal prejudiced him. *See, e.g., United States v. Taylor*, 183 F.3d 1199, 1204-05 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library.") (*citing Lewis v. Casey*, 518 U.S. 343, 350-51 (1996)). Moreover, the OCCA expressly found Petitioner had not demonstrated any error resulting from this alleged denial of access to the courts. And before this Court, Petitioner makes no showing that the result of his appeal would have been different had his alleged lack of access to courts been raised as a claim on direct appeal.[23]

For all these reasons, Petitioner fails to demonstrate the OCCA's denial of Petitioner's claim of ineffective assistance of appellate counsel for failing to raise an access to courts claim on direct appeal is contrary to or an unreasonable application of *Strickland*. This claim, therefore, should be denied.

### C.   Procedurally Barred Claims – Grounds Three through Seven

Respondent has raised the defense of procedural bar as to the claims raised in Grounds Three, Four, Five, Six and Seven of the Petition.[24] As stated above, Petitioner did not raise these

---

[23] Petitioner brought a claim pursuant to 42 U.S.C. § 1983 alleging a denial of his First Amendment rights based on these same facts. *See Cleveland v. Harvanek*, 607 F. App'x 770, 773 (10th Cir. 2015) ("Cleveland contends that prison officials abridged his First Amendment rights by denying him law library access to file a pro se supplement to a brief filed by his direct appeal counsel."). The Tenth Circuit affirmed the district court's denial of this claim as frivolous. *See id.* (recognizing well-established rule that "provision of legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library") (internal quotation marks and citation omitted).

[24] As set forth above those claims are:

- Ground Three: The trial court erred when it failed to address Petitioner's claim that fundamentally ambiguous questions cannot produce perjured answers and

claims on direct appeal, instead raising them for the first time during state post-conviction proceedings. The OCCA denied the claims on grounds the claims "either were raised or could have been raised in his direct appeal." *See* OCCA Order at p. 2 (*citing* Okla. Stat. tit. 22, § 1086).[25]

The procedural default doctrine prohibits a federal court from considering a specific habeas claim where the state's highest court declined to reach the merits of that claim on independent and adequate state procedural grounds. *Coleman*, 501 U.S. at 729. It is well-established that Oklahoma's statutory bar set forth in § 1086 is both independent and adequate. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002); *see also Smith v. Workman*, 550 F.3d 1258, 1267 (10th Cir. 2008).

---

        failed to grant Petitioner's motion to quash the Information due to insufficiency of the evidence;

•     Ground Four: The trial court erred when it denied Petitioner's motion to suppress evidence obtained in violation of his Fourth Amendment rights;

•     Ground Five: Petitioner was denied a fundamentally fair trial in violation of his Sixth and Fourteenth Amendment rights due to the admission of other crime evidence, prosecutorial misconduct and cumulative error;

•     Ground Six: Petitioner's Fifth Amendment privilege against self-incrimination was violated by witness testimony about findings made in a prior proceeding to terminate Petitioner's parental rights which included references to Petitioner's invocation of the privilege; and

•     Ground Seven: Petitioner's First Amendment right of access to the courts was violated because the Oklahoma Department of Corrections hindered his ability to file a pro se legal brief in the direct appeal of his conviction.

[25] The OCCA briefly addressed the merits of the barred claims, but only in the context of reviewing Petitioner's ineffective assistance of appellate counsel claim. *See* OCCA Order at pp. 3-4. Application of the doctrine of procedural bar in such circumstances is proper. *See Cole v. Trammell,* 755 F.3d 1142, 1158-59 (10th Cir. 2014); *see also Thacker v. Workman*, 678 F.3d 820, 834 n. 5 (10th Cir. 2012).

The procedural bar can be overcome only if Petitioner can demonstrate cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if the claims were not considered. *Coleman*, 501 U.S. at 750. As cause, Petitioner relies upon his claim of ineffective assistance of appellate counsel. *See Ryder,* 810 F.3d at747 ("A claim of ineffective assistance of appellate counsel can serve as cause and prejudice to overcome a procedural bar, it is has merit."). But as addressed above, the Court has determined that Petitioner's ineffective assistance of counsel claim lacks merit. Because appellate counsel did not provide constitutionally ineffective assistance, Petitioner fails to establish cause sufficient to overcome the procedural default of his claims.

Nor can Petitioner demonstrate a fundamental miscarriage of justice. To meet the fundamental miscarriage of justice standard, a petitioner must supplement his habeas claim with a colorable showing of actual innocence. *Moore v. Reynolds*, 153 F.3d 1086, 1097 (10th Cir. 1998) (citation omitted). "This exception . . . is a markedly narrow one, implicated only in extraordinary case[s] where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (quotation omitted). "To make a credible showing of actual innocence, a petitioner must support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014) (internal quotations and citations omitted). Petitioner has failed to produce evidence that would convince this Court that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In fact, none of Petitioner's claims for habeas relief suggest actual innocence, as opposed to "mere legal insufficiency" as to

the crime for which he was convicted.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (claim of actual innocence must be based on new evidence suggesting "factual innocence, not mere legal insufficiency").  Accordingly, Petitioner fails to overcome the procedural default of the claims raised in Grounds Three though Seven of the Petition and those claims should be denied.[26]

## RECOMMENDATION

It is recommended that the Petition [Doc. No. 1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed with the Clerk of the District Court by August 18, 2016.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[26] Petitioner's Reply is largely devoted to allegations of his actual innocence.  He raised many of these same allegations in the previously referenced habeas action filed in this judicial district, *Cleveland v. Havanek*, Case No. CIV-12-86-F.  On appeal to the Tenth Circuit, the court reviewed the allegations and the "evidence" submitted by Petitioner in support thereof.  The court rejected Petitioner's claim of "new evidence" finding that Petitioner had failed to demonstrate he could not have discovered this evidence previously, through the exercise of due diligence.  *See Cleveland v. Havanek*, 569 F. App'x 636, 640-41 (10th Cir. 2014) (*citing* 28 U.S.C. § 2244(b)(2)(B)).  Similarly here, Plaintiff fails to demonstrate the evidence referenced in support of the allegations in his Reply qualifies as new evidence sufficient to support a claim of actual innocence.

**<u>STATUS OF REFERRAL</u>**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 28th day of July, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE